**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| ANTONIO EPPS, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 18-cv-2983 |
| | ) | |
| v. | ) | Judge Robert M. Dow, Jr. |
| | ) | |
| DANIEL PATRIQUIN, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is a motion for summary judgment [48] filed by Defendants Julius Gambino, Sherry Williams, and Danial Patriquin. For the reasons set forth below, the motion [48] is granted. The case is set for a telephonic status hearing on August 28, 2020 at 10:30 a.m. The parties are directed to file a joint status report no later than August 25, 2020 discussing their views on resolving the remaining claim in the case (*i.e.*, remaining damages discovery, settlement conference, bench trial, or jury trial).

**I.      Background**

**A.      Local Rule 56.1**

Local Rule 56 "may be the most important litigation rule outside statutes of limitations because the consequences of failing to satisfy its requirements are so dire." *Malec v. Sanford*, 191 F.R.D. 581, 584 (N.D. Ill. 2000). The Rule requires a party moving for summary judgment to submit a statement of material facts as to which the movant contends there is no genuine issue and entitles the movant to judgment as a matter of law. L.R. 56.1(a)(3). The Rule further requires that such a statement consist of "short numbed paragraphs" to allow a responding party to easily answer

or deny the allegations contained within. L.R. 56.1(a); *Malec*, 191 F.R.D. at 583. Accordingly, any party opposing such a motion must file "a response to each numbered paragraph in the moving party's statement, including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon." L.R. 56.1(b)(3)(B); *Cracco v. Vitran Exp., Inc.*, 559 F.3d 625, 632 (7th Cir. 2009). "When a responding party's statement fails to dispute the facts set forth in the moving party's statement in the manner dictated by the rule, those facts are deemed admitted for purposes of the motion." *Cracco*, 599 F.3d at 632 (citing *Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003)). Here, Plaintiff has failed respond to Gambino's Local Rules statement at all. The Court deems all of Gambino's statements supported by the record and not directly contradicted by one of Plaintiff's statements of facts to be admitted.

Plaintiff's own statement of additional facts pursuant to Local Rule 56.1 are also non-compliant in that seven of them solely reference his own complaint. "Once a party has made a properly-supported motion for summary judgment, the opposing party may not simply rest upon the pleadings but must instead submit evidentiary materials that 'set forth specific facts showing that there is a genuine issue for trial.'" *Harney v. Speedway SuperAmerica, LLC*, 526 F.3d 1099, 1104 (7th Cir. 2008) (quoting Fed. R. Civ. P. 56(e)); see also *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). Thus, to the extent that these allegations are contradicted by Gambino's statement of facts, they are improperly supported and accordingly disregarded.

Otherwise, these facts are taken from the parties' respective Local Rule 56.1 statements and supporting exhibits [49]; [52]; [55]. The Court construes the facts in the light most favorable to the non-moving party, here Plaintiff. "When we cite as undisputed a statement of fact that a party has attempted to dispute, it reflects our determination that the evidence cited in the response does not show that the fact is in genuine dispute." *NAR Business Park, LLC v. Ozark Automotive*

*Distributors, LLC,* --- F. Supp. 3d ---, 2019 WL 7401503, at *1 (N.D. Ill. Dec. 30, 2019) (quotation marks and citation omitted).

**B.    Facts**

In August 2017, Plaintiff Antonio Epps was a pretrial detainee in Pod I of the Will County Adult Detention Facility ("WCADF") and assigned a cell with Arshey T. Harris. [55, ¶ 1.] Defendant Julius Gambino was (and apparently still is) a deputy correctional officer ("CO") at the WCADF.[1] [49, ¶ 3]

On August 22, 2017, Gambino was working in Pod I, and issued razors to inmates who wanted to shave, including Harris. [49, ¶ 21.] After going down to the first floor of the Pod to retrieve his razor, Harris returned to his second-floor cell. [55, ¶ 12.] Plaintiff, who had been brushing his teeth in the cell, left so that Harris could use the sink. [*Id.*, ¶ 13.] After 15 minutes, all of the other inmates besides Harris had returned their razors. [*Id.*, ¶ 14.] Gambino, who was stationed at the first-floor control desk, called out "Harris, Harris, I need that razor" several times.[2] [*Id.*, ¶ 15–16.] Harris did not respond. [*Id.*, ¶ 17.]

Gambino then called to Plaintiff, who was still outside the cell brushing his teeth. See [*id.*, ¶¶ 17–18.] He said, "Your cellie can't hear me? Tell him come on with the razor, he's the last one with the razor." [*Id.*, ¶ 17.] Plaintiff entered the cell, went past Harris, spat his toothpaste into the toilet, and told Harris that Gambino wanted the razor back. See [*id.*, ¶¶ 18, 20.] Harris then blew up and started yelling at Plaintiff. [*Id.*, ¶ 19.] Plaintiff asked Harris to let him out of the cell, as

---

[1] As hinted at below, this title may be something a misnomer, given that pretrial detainees are presumed innocent. Regardless, the Court will refer to Gambino by the title for simplicity's sake.

[2] The parties dispute how many times Gambino called out. Viewing the evidence in the light most favorable to the non-movant, the Court adopts Plaintiff's reading.

Harris was presumably blocking the means of egress.[3] [49-5 at 103]. Harris then broke the razor and started slashing at Plaintiff's face with it. [55, ¶ 21.] Plaintiff escaped and ran downstairs, where Gambino ordered both Plaintiff and Harris down on the ground and called the emergency response team, who arrived imminently. [*Id.*]; [49, ¶ 30.]

Gambino testified that generally, when an inmate refused to relinquish a razor, he would lock the pod down, remove the cellmate to a separate location, and call the emergency response team. [49, ¶ 24.] Here, however, there is no record evidence that Gambino perceived a refusal to return the razor on Harris's part. See [55, ¶ 22.]

Plaintiff filed suit against Gambino in his individual capacity pursuant to 42 U.S.C. § 1983, alleging that Gambino's failure to protect him from Harris's assault violated the Constitution. See [33, ¶¶ 36–42, 62]. Plaintiff's complaint also listed Sherry Williams and Daniel Patriquin as defendants in their individual capacities, and included official capacity claims against all three individuals. See generally [*id.*] All three Defendants moved for summary judgment on the official capacity claims, and Gambino and Williams moved for summary judgment on the individual capacity claims. [50.] In response, Plaintiff conceded all but the individual capacity claim against Gambino, which is now the only issue for the Court to decide at this juncture.[4] See [51 at 3].

---

[3] Though Gambino disputes that Plaintiff testified in his deposition that Harris stood between Plaintiff and the door, the context of Plaintiff's statement strongly implies as much. Plaintiff had to ask Harris to step out of the way to clear a way to the toilet, and then asked Harris to be let out once Harris blew up.

[4] Patriquin has not moved for summary judgment on the individual capacity claim against him. Briefly, and by way of background, Plaintiff alleges that prior to the razor incident, Harris became agitated during a conversation with Patriquin and repeatedly threatened to violently lash out. Plaintiff, overhearing this, asked to be moved to a different cell. Even assuming that Plaintiff's allegations about Harris's conversation with Patriquin are true, there is no record evidence that anyone besides the three of them knew about the threat or Plaintiff's fear of his cellmate; Plaintiff effectively concedes that Gambino did not know about Harris's violent threats in his response here. See generally [51].

4

II.    **Legal Standard**

Summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." See Fed. R. Civ. P. 56(a). Rule 56 makes clear that whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing to particular parts of the record, including depositions, documents, or affidavits. Fed. R. Civ. P. 56(c)(1). A party can also support a fact by showing that the materials cited do not establish the absence or presence of a genuine dispute or that the adverse party cannot produce admissible evidence to support the fact. *Id.* In determining whether summary judgment is appropriate, the Court must construe all facts in a light most favorable to the non-moving party (here, Plaintiff) and draw all reasonable inferences in that party's favor. *Majors v. Gen. Elec. Co.*, 714 F.3d 527, 532 (7th Cir. 2013) (citation omitted). But Plaintiff "is only entitled to the benefit of inferences supported by admissible evidence, not those 'supported by only speculation or conjecture.'" *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 568 (7th Cir. 2017) (citation and quotation marks omitted). Rule 56(a) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against any party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party would bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In other words, the moving party may meet its burden by pointing out to the court that "there is an absence of evidence to support the nonmoving party's case." *Id.* at 324.

It is not the role of the Court to scour the record in search of evidence to defeat a motion for summary judgment; instead, the nonmoving party bears the responsibility of identifying evidence to defeat summary judgment. *Harney*, LLC, 526 F.3d at 1104. To avoid summary judgment, the nonmoving party must go beyond the pleadings and "set forth specific facts showing

that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250 (internal quotation marks and citation omitted). For this reason, the Seventh Circuit has called summary judgment the "put up or shut up" moment in a lawsuit—"when a party must show what evidence it has that would convince a trier of fact to accept its version of events." See *Steen v. Myers*, 486 F.3d 1017, 1022 (7th Cir. 2007). In other words, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252.

## III.    Analysis

A pretrial detainee's rights are secured by the Fourteenth Amendment's Due Process Clause. *Hardeman v. Curran*, 933 F.3d 816, 821–22 (7th Cir. 2019) (citing *Kingsley v. Hendrickson*, 576 U.S. 389, 135 S. Ct. 2466, 2475 (2015)). Because detainees are presumed innocent, it is inappropriate to import Eighth Amendment standards regarding cruel and unusual *punishment* wholesale. See *Kingsley*, 135 S. Ct. at 2473. Thus, unlike in the prison context, a pretrial detention employee's objectively unreasonable behavior is actionable, even if it was not deliberate. *Hardeman*, 933 F.3d at 823.

But not every negligent slip-up that occurs in a jail is a violation of the Constitution. See *Miranda v. County of Lake*, 900 F.3d 335, 353 (7th Cir. 2018). Rather, the Seventh Circuit has adopted a two-part test to examine whether a given action has violated the Constitution. "The first step, which focuses on the intentionality of the individual defendant's conduct, * * * 'asks whether the [] defendants acted purposefully, knowingly, or perhaps even recklessly when they considered the consequences of their handling of [plaintiff's] case.'" *McCann v. Ogle County, Illinois*, 909

F.3d 881, 886 (7th Cir. 2018) (quoting *Miranda*, 900 F.3d at 353). "At the second step, * * * we ask whether the challenged conduct was objectively reasonable. This standard requires courts to focus on the totality of facts and circumstances faced by the individual * * * and to gauge objectively—without regard to any subjective belief held by the individual—whether the response was reasonable." *Id.* (citing *Miranda*, 900 F.3d at 354).[5] In other words, a plaintiff "must show that that a defendant acted intentionally or recklessly as he 'knew, or should have known, that the condition posed an excessive risk to health or safety' and 'failed to act with reasonable care to mitigate the risk.'" *Stidimire v. Watson*, 2018 WL 4680666, at *4 (S.D. Ill. Sept. 28, 2018) (paraphrasing *Miranda* and *Kingsley*).

Gambino argues that he did not have the requisite *mens rea* to trigger constitutional liability, because he did not know that Harris was on the precipice of a violent outburst (or even acting non-compliantly about the razor). Moreover, assuming arguendo that he failed to follow razor return protocols to the T, this was at worst negligent, and his request for Plaintiff's assistance was reasonable under the circumstances. Plaintiff counters that Gambino's failure to follow his razor-return rules violated the Due Process Clause by placing Plaintiff directly in harm's way. Specifically, he claims that the risk of assault was obvious in the situation, and Gambino failed to utilize the reasonable alternative of a complete lockdown.

Gambino is entitled to summary judgment, as Plaintiff's claim fails both prongs. First, Gambino did not act recklessly. Taking the record in the light most favorable to Plaintiff, there is

---

[5] The parties urge the Court to adopt the Ninth Circuit's similar operationalization of *Kingsley* for the failure-to-protect context. See *Castro v. County of Los Angeles*, 833 F.3d 1060, 1071 (9th Cir. 2016) (en banc) (announcing a four-part test). Given that the Seventh Circuit has endorsed *Castro*'s approach, *Miranda*, 900 F.3d at 351, 353–54 (citing *Castro* approvingly); *Hardeman*, 933 F.3d at 823 (same); see also *Smith v. Sims*, 2019 WL 5430700, at *3 (S.D. Ill. Sept. 19, 2019) (applying *Castro* test in light of the Seventh Circuit's apparent approval of the opinion), the Court considers *Castro* strong persuasive authority. But this circuit has its own two-part test, so there is no need to muddy the waters by introducing foreign elements that do not cleanly overlap with the factors that this Court must apply.

still nothing showing that Gambino "foresaw or ignored the potential consequences" of asking Plaintiff to check on Harris. *McCann*, 909 F.3d at 887; see also *Pittman v. County of Madison*, 2019 WL 4343707, *2 (S.D. Ill. Sept. 12 2019) (liability only attaches if C.O. was "aware of or should have been aware of a *strong likelihood*" of harm) (emphasis added); *Dawson v. Dart*, 2020 WL 1182659, at *2 (N.D. Ill. Mar. 12, 2020) (CO's knowledge that blockmate had history of violence and mental health issues "did not put him on notice of any *substantial risk* of harm beyond the 'baseline dangerousness of [jail] life.'") (emphasis added) (quoting *Grieveson v. Anderson*, 538 F.3d 763, 776 (7th Cir. 2008)). And Gambino's failure to proceed cautiously and institute a full lockdown upon Harris's mere non-responsiveness at most "sounds in negligence, which is insufficient to support" a Fourteenth Amendment claim. *McCann*, 909 at 887 (citing *Miranda*, 900 F.3d at 353). Indeed, it was far from "obvious" that Harris's dawdling was a signal that he was going to attack the next person who said anything to him. See *Castro*, 833 F.3d at 1071. Plaintiff's own actions further bely any inference that Gambino knew or should have known the risks of asking Harris to hurry up. If anything, Plaintiff should have been even more wary of Harris, because Plaintiff (unlike Gambino) allegedly knew that Harris was unstable, threatening, and violent. Yet according to Plaintiff's own testimony, he put himself in an especially vulnerable position by entering the cell and walking past Harris such that Harris blocked the only means of egress. If it was "obvious" that Harris would erupt upon being asked about the razor, then why did Plaintiff literally back himself into a corner before making an inquiry?

Second, there is no evidence from which a rational jury could conclude that Gambino acted unreasonably. At most, the facts and circumstances facing Gambino were that Harris was non-responsive—there is not even any record evidence that Harris actively refused to return the razor or even *did* anything. Gambino's response was therefore reasonable because he had no notice of

the risks facing Plaintiff. *McCann*, 909 F.3d at 887 (nurse's failure to take detainee's vital signs not unreasonable, because detainee's sudden lethargy did not sufficiently put her on notice of his deeper health issues); *McKinney v. Franklin County, Illinois*, 417 F. Supp. 3d 1125, 1138–39 (S.D. Ill. 2019) (defendants' failure to closely monitor detainee was not unreasonable when the only suggestion that the detainee would commit suicide was that he was agitated at intake and took psychotropic medication); *Stidimire*, 2018 WL 4680666, at *4 (defendants' conduct was not unreasonable if they did not see an obvious external manifestation of the risk). Even viewing the evidence in the light most favorable to Plaintiff, Harris may not have heard Gambino's command or was being, at worst, a nuisance in ignoring it, so there was nothing unreasonable about Gambino asking Plaintiff to check on him.

Plaintiff implies that the availability of a lockdown renders any other course of action unreasonable. But this has it backwards: the question is whether Gambino's conduct, in the moment, was objectively reasonable given the known risks to Plaintiff, not whether, with the benefit of hindsight, one can imagine alternatives that could have prevented harm.[6] *McCann*, 909 F.3d at 887. Indeed, Plaintiff's approach would render summary judgment inappropriate in any Fourteenth Amendment case and must be rejected.

---

[6] The language about "available" alternatives apparently comes from the Ninth Circuit's *Castro* opinion. To the extent that Plaintiff argues that the availability of hypothetical alternative courses of action precludes summary judgment, the Seventh Circuit has rejected that approach. *McCann*, 909 F.3d at 887. In any event, *Castro*'s reasonableness standard appears to mirror that used in this circuit. See *Castro*, 833 F.3d at 1071 ("With respect to the third element, the defendant's conduct must be objectively unreasonable.") If anything, then, the focus on availability acts a shield for defendants, so they cannot be held liable for putting a pretrial detainee in harm's way if there were no other reasonable alternatives available.

**IV.** **Conclusion**

For the reasons set forth above, the motion for summary judgment filed by Defendants Julius Gambino, Sherry Williams, and Danial Patriquin [48] is granted. The case is set for a telephonic status hearing on August 28, 2020 at 10:30 a.m.  The parties are directed to file a joint status report no later than August 25, 2020 discussing their views on resolving the remaining claim in the case (*i.e.*, remaining damages discovery, settlement conference, bench trial, or jury trial).

Dated: August 5, 2020

_____
Robert M. Dow, Jr.
United States District Judge